## BARNEY FARRELL *vs.* THE CITY OF BRIDGEPORT.

By the charter of the city of Bridgeport the power of appointment of police-men is vested in the common council, such appointment to be made however only upon nomination by the board of police commissioners, unless the latter fail to make nominations, in which case the council can fill any vacancies by appointments *ad interim.* The commissioners nominated the full number of policemen and the council rejected two of the nominees and thereupon appointed *F* to fill *ad interim* one of the vacancies so made. The police commissioners refused to recognize his appointment as legal, but he tendered his services daily for one year to the proper officer, who refused to assign him to service. Held—

1. That on the failure of the council to approve two of the nominations made, the right to make other nominations for the two places remained with the commissioners.
2. That there was therefore no vacancy to be filled by the appointment of *F* by the council.
3. That *F* therefore had no title to the office and was not entitled to the salary.

A person is not entitled to the salary of a public office unless he both obtains and exercises the office.

A policeman of a city is a public officer holding his office as a trust from the state, and not as a matter of contract between himself and the city.

The charter of the city provided for the appointment of policemen to hold office until regularly removed or suspended. *F* had held the office of policeman for three years under the charter, when the common council, under a power given by the charter to make ordinances relative to the city police, passed an ordinance that the appointments should be for one year. *F* was nominated and confirmed under the ordinance for one year, and accepted and exercised the office. Held that, if the commissioners and council had no right by a mere new appointment of *F* for the limited term, to terminate his tenure of office under his former appointment, yet as he accepted and exercised the office under the new appointment, he could not claim that his tenure of the office was a continuance of his original tenure.

PETITION for the dissolution of an injunction; brought to the Superior Court in Fairfield County, and reserved upon facts found for the advice of this court. The case is sufficiently stated in the opinion.

*H. S. Sanford* and *I. M. Bullock,* for the petitioner.

*W. K. Seeley,* for the respondents.

PARDEE, J. This petition asks for the dissolution of an injunction granted in August, 1873, restraining the clerk,

auditor and treasurer of the city of Bridgeport from carrying into effect a vote of the common council directing them to pay the petitioner the salary due to a police officer of that city.

The sixty-fourth section of the charter of the city provides as follows:—— .

"It shall be the duty of the police commissioners to nominate to the common council suitable persons to fill any and all vacancies that may for any cause at any time during their term of office occur or exist among the officers or members of the police department, and to recommend the suspension, removal or expulsion of any officer or member from office or membership in said department, whenever in the judgment of said commissioners such suspension, removal or expulsion shall be for the best interests of the city. The common council shall have the sole power of appointment and removal of officers and members of said department, but no person other than those nominated by the said board of police commissioners shall be appointed an officer or member of said department, and no person shall be suspended, removed or expelled from office or membership in said department, (unless in cases of malfeasance in office,) except on the recommendation of said board of police commissioners: provided that, in case of a failure for any cause to effect a nomination, the common council may proceed to fill any vacancies in said department, in which case the mayor shall have a casting vote; but the persons so appointed by the common council, without a previous nomination by the commissioners, shall be acting officers or members only, as the case may be, and shall hold their appointments *ad interim*, until nominations shall have been duly made by said board of commissioners and confirmed by said common council."

Under the twenty-fifth section the council has power to make ordinances "relative to the city police;" and in April, 1872, it passed an ordinance of which the first section is as follows:—

"The police force of said city shall consist of a captain of police, two sergeants, to be designated the first and second

sergeant, and not less than ten nor more than twenty police-men, and not less than ten nor more than thirty special police-men, all of whom shall be electors of said city, shall be appointed in the manner provided in the charter of said city, shall be sworn to the faithful performance of the duties of their office before entering upon it, and shall hold their respective offices until noon of the first Monday in June next succeeding their appointment, and until others are appointed in their stead, unless sooner suspended or removed. Provided however, that if the police commissioners of said city shall fail to nominate to the common council on or before the first Monday of May, 1872, and on or before the first Monday of May in each succeeding year, persons to constitute the police force, said common council may at any legal meeting thereof proceed to appoint acting officers and members of said police force as in case of vacancy, who shall hold their respective offices as in said charter provided."

In May, 1872, Farrell, who had been a member of the police force since 1869, was nominated by the commissioners and confirmed by the council under this ordinance as a police-man for the period of one year from June, 1872.

The council could not of itself, by the enactment of an ordinance declaring that a policeman should hold his office by virtue of an annual appointment, put an end to the right of Farrell to hold the office to which he had been duly appointed in 1869; but the commissioners accepted the ordinance as the rule of their conduct, and subsequently to the passage thereof made all nominations for policemen for the term of one year; and Farrell, in consideration of the new and limited appoint-ment, waived all claim to hold office under the former one; he accepted in 1872 an office for one year expressly established in place of and as a substitute for one of a different tenure; he intentionally discharged the duties and received the salary belonging to it; and by his acceptance and exercise of this new and substituted office surrendered all claim to, and must be holden to have resigned, the former one. It will not therefore now avail him to insist that the commissioners and

council were not authorized to allow him to exercise the last one.

By the united action therefore of the council, the commissioners and of himself, his right to hold and exercise the office terminated in June, 1873, not to be continued except upon his re-nomination and confirmation by these bodies respectively.

On the 24th day of May, 1873, the commissioners, in pursuance of said ordinance, and in accordance with a previous understanding between themselves and the council that sixteen policemen should constitute the police force of the city, nominated that number of persons as policemen for the year commencing June 2d, 1873. This nomination included some persons who were then holding office as policemen and some who were not. Farrell was dropped. In this nomination, as communicated to and acted upon by the council, no one new name was designated as taking the place of any particular one of those omitted from the list. The nomination of the whole number was made as an aggregate and as an unit to take the place of the former aggregate and unit; by force of this last nomination the entire body of policemen for the preceding year as to all its individuals and in its unity went out of office; if the council failed to confirm any individual of the substituted aggregate a vacancy occurred; the tenure of office of a particular member of the previous aggregate was not thereby extended beyond the last named date.

On the 24th day of May, 1873, the council, having before them this nomination, rejected two persons named therein, one of whom was William Anderson, and in his place substituted the petitioner as an *ad interim* appointee, and during the ensuing year he daily reported to the proper officer, who, under instructions from the commissioners, refused to assign him to or permit him to perform any duty. He now insists that this tender of service entitles him to the salary attached to the office.

The charter provides "that in case of a failure on the part of said commissioners for any cause to effect a nomination the common council may proceed to fill any vacancies."

But there was no failure on the part of the commissioners to nominate; they had nominated the full number; the council had exercised their right of rejection; the right to nomin... other persons in place of those rejected remained in the com missioners, and until they had failed or declined to discha... the duty of nomination the council could not proceed ... declare vacancies and fill them by *ad interim* appointments and, inasmuch as the commissioners were presumably ready and willing to make nominations to fill vacancies resulting from the refusal of the council to confirm such as had been previously made, the appointment of the petitioner by the latter was in violation of the charter and conferred no rights upon him; and he is chargeable with legal knowledge that he could neither hold the office nor draw the salary.

The case finds that on the 2d day of June, 1873, the com missioners amended the record of their action on the 26th day of May by adding a statement thereto that they had nominated William Anderson to take the place of Barney Farrell; but this amendment was made subsequent to the action of the council upon their original general nomination, and no notice thereof was ever given to the latter body.

Again, a policeman of the city of Bridgeport is an arm of the law; he holds an office as a trust from the state; he is a preserver of the public peace; he is not the hired servant of a master; no contract relation exists between him and the city by which he is bound to its service; he can lay down his trust at any time according to his pleasure without exposing himself to an action for damages for breach of contract.

As a rule, so far forth as public officers are concerned, those only are entitled to the salary who both obtain and exercise their offices. Payment follows the actual discharge of duty, and not the formal offer to do it, no matter how honestly or persistently made. *Samis* v. *King*, 40 Conn., 298.

We advise the Superior Court to dismiss the petition.

In this opinion the other judges concurred.