### WILLIAMS v. DARLING et al.

(Supreme Court, Special Term, Broome County. April, 1910.)

1. MUNICIPAL CORPORATIONS (§ 157*)—OFFICES—RIGHT OF VETERAN TO HOLD OFFICE.

Relator, a veteran of the Civil War, was appointed to the office of superintendent of streets and city property in 1903 to fill an unexpired term which terminated in 1905. He held such position until January 1, 1908, when he was reappointed for the term of two years ending on the 31st day of December, 1909, when respondent C. was appointed in his place. Civil Service Law (Consol. Laws, c. 7) § 22, provides that a veteran shall not be removed except for incompetency or misconduct. *Held,* that the purpose of section 22 was to prevent the summary removal of a veteran who was holding under appointment for an indefinite term, and that the civil service law could not extend the term of an appointment

---

made for a definite statutory period, and that relator's right to the office expired on December 31, 1909.

[Ed. Note.—For other cases, see Municipal Corporations, Dec. Dig. § 157.*]

2. MUNICIPAL CORPORATIONS (§ 157*)—OFFICES—CIVIL SERVICE LAW—"DEPUTY."

Civil Service Law (Consol. Laws, c. 7) § 22, providing that a veteran shall not be removed except for incompetency or misconduct, but that the section shall not apply to the position of deputy of any official or department, does not prevent the removal of a veteran from the position of superintendent of streets, where, by the city charter, it is provided that the commissioner of public works shall be the head of the department of public works, and that he shall appoint, to hold during his pleasure, a superintendent of streets, and that in case of the absence or disability of the commissioner, or a vacancy in the office, the superintendent of streets shall discharge the duties of the office until the commissioner returns or his disability ceases, or the vacancy is filled; the duty of the superintendent being to supervise the making and repairing of streets under the direction of the commissioner of public works, a deputy being a subordinate officer authorized to act in place of the principal officer in his absence.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. § 347; Dec. Dig. § 157.*

For other definitions, see Words and Phrases, vol. 3, pp. 2008, 2009.]

Joshua V. N. Williams applies for a peremptory writ of mandamus to Charles S. Darling, as commissioner of public works of the city of Binghamton, and Charles A. Cockroft. Application denied.

Rollin W. Meeker, for relator.
Almiron M. Sperry, for respondents.

LYON, J. The facts are conceded. The relator is a Union veteran of the late Civil War. On May 12, 1903, he was appointed superintendent of streets and city property by the board of street commissioners of the city of Binghamton, after certification by the municipal civil service commission upon a noncompetitive examination, to fill the unexpired term of J. M. Seabury, which terminated in February, 1905. Under the city charter then in force, the appointment was for a term of two years. The position was noncompetitive in the classified service. Its duties were to see that the streets and sidewalks were kept free from snow and ice, and that the ordinances respecting sidewalks and bridges were enforced, to execute any resolution passed by the common council, with the oversight of which the superintendent of streets was charged, and to exercise general supervision of the buildings and property belonging to the city. The relator held such position continuously until the 1st day of January, 1908, but whether under any appointment subsequent to that of May, 1903, does not appear. The amended charter of the city of Binghamton (chapter 751, Laws 1907) which took effect January 1, 1908, abolished the board of street commissioners as well as the office of superintendent of streets and city property, and created the offices of commissioner of public works and superintendent of streets. It provided that the commissioner of public works should be the head of the department of

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

public works, and that he should appoint to hold during his pleasure a superintendent of streets, a sidewalk inspector, a clerk, and other subordinates; that in case of the absence or disability of the commissioner, or of a vacancy in the office, the superintendent of streets should discharge the duties of the office until the commissioner should return, his disability have ceased, or the vacancy have been filled. The duty of the commissioner of public works was comprehensive as to the construction and repairing of highways and of city buildings, bridges, and sewers. It included the supervision of city property, which under the former charter had been one of the duties of the superintendent of streets and city property. The duty of the superintendent of streets was to personally supervise the making and repairing of streets and other highways, and to act in all things, except while himself acting as commissioner of public works, under the direction of the commissioner of public works.

On January 14, 1908, the commissioner of public works, Walter J. Moon, in writing, appointed the relator, superintendent of streets, for the term of two years, ending on the 31st day of December, 1909. On January 1, 1910, the respondent Charles S. Darling, was duly appointed commissioner of public works, and thereupon, under the protest of the relator, appointed the respondent Charles A. Cockroft superintendent of streets for the term of two years commencing January 1, 1910; and the latter is now discharging the duties of the position. The relator claims that, by reason of his being a veteran, he held over and still continues to hold the office of superintendent of streets, and that the appointment of Cockroft was a nullity. This is the question to be decided in this proceeding. As above stated, the appointment of the relator was in express terms "for the term of two years ending December 31, 1909." The order to show cause herein was granted and served January 21, 1910.

Unless a distinction exists between the legal effect of the expiration of a term fixed by statute and that of the term of relator fixed by the commissioner of public works, the decision of the Court of Appeals in the Matter of Tiffany, 179 N. Y. 455, 72 N. E. 512, is decisive of the question at issue. In that case a veteran who had passed a civil service examination was appointed a policeman of the city of Jamestown. He held the position for several years, and on April 7, 1902, was reappointed for a term expiring on the Monday following the annual city election to be held in the year 1903. Subsequent to that election he applied for further reappointment, which was refused, after which he instituted mandamus proceedings to compel his reinstatement. The court held that the civil service law could not prevent an office becoming vacant by expiration of the statutory term of office, that any other construction would make an office permanent, and that the right of the veteran to a continuation of his term did not exist.

In the case of Farrell v. City of Bridgeport, 45 Conn. 191, it was decided that a person rightfully holding an office under an appointment for an indefinite term which could be terminated only by removal, but who was reappointed for a definite term under an unauthorized shortening of the original term of office, and who accepted the office under

the new appointment, could not claim that his tenure of office was a continuance of his original tenure, but that, by his acceptance and intentional discharge of the duties of the office and receipt of the salary belonging to it, he surrendered and waived all claim to the office under the indefinite period.

Section 22 of the New York civil service law (Consol. Laws, c. 7), so far as material to be considered here, provided that a veteran should not be removed except for incompetency or misconduct shown after hearing upon due notice upon stated charges. The purpose of this section was to prevent the summary removal of a veteran who was holding under an appointment for an indefinite term. The civil service law could not extend the term of an appointment which had been made for a definite statutory period.

Commissioner Moon had the right at any time after January 1, 1908, to appoint the relator superintendent of streets to hold office during the pleasure of the commissioner. The relator at the time of receiving the appointment was holding over, if at all, under an appointment for a term fixed by statute, and hence cannot claim that a tenure of office existed in his favor under a preceding appointment for an indefinite period. Commissioner Moon in effect assumed to determine in advance the length of time during which it was his pleasure that the relator should hold the office of superintendent of streets, and the relator without any protest whatever so far as appears assented to such determination of his term of office and waived the requirements for his benefit contained in section 22 above referred to. Having accepted the appointment, performed the duties of the office, and drawn the salary accompanying it, he must, it seems to me, to be held to have agreed to the limitation contained in the appointment, and be bound by it. The good faith of Commissioner Moon in limiting the term is not questioned. No claim is made that the limitation was placed upon the appointment for the purpose of avoiding the effect of the civil service law and, in fact, all the circumstances expressly negative such an inference. Neither is there any claim made that the appointment of Charles A. Cockroft was not in all respects regular in case a vacancy then existed in the office of superintendent of streets. I think it must be held that relator's right to hold the office of superintendent of streets expired with the expiration of the term of office for which he was appointed.

The second important question which arises upon this application is whether the position of superintendent of streets was subject to the provision of section 22 of the civil service law to the effect that nothing in that section should be construed to apply to the position of deputy of any official or department. If the superintendent of streets was the deputy of the commissioner of public works, concededly the application for a writ of mandamus must be denied upon that ground. A deputy is defined in law to be "a person deputed to act for another"; "a person who by authority exercises another's office, or some function thereof"; "a subordinate officer authorized to act in place of the principal officer, as, for instance, in his absence." As hereinbefore stated, the charter created the commissioner of public works, the head

of the department of public works, and vested in him, among other things, the "cognizance, direction, and control of the construction, maintenance, alteration, repair, * * * and improving of the streets, highways, sidewalks, and public places of the city," and provided that the duties of the superintendent of streets should be to "personally supervise the making and repairing of streets and other highways, and act in all things, except as in this act otherwise provided, under the direction of the commissioner of public works." The exception above referred to is that:

"In case of the absence or disability of the commissioner of public works or of a vacancy in the office, the superintendent of streets shall discharge the duties of the office until the commissioner returns, his disability ceases, or the vacancy is filled."

Thus the duties of the superintendent of streets are to personally supervise under the direction of the commissioner of public works during the pleasure of the commissioner certain work of which the commissioner of public works is given cognizance, direction, and control, and to perform the duties of the commissioner of public works in the absence of the commissioner or in the event of his disability or of a vacancy in his office. In view of these relations, I think the superintendent of streets is a deputy of the commissioner of public works or of that department within the intent of the civil service law.

A very similar case arose in the city of Albany, that of People ex rel. Jones v. Baker, 12 Misc. Rep. 389, 34 N. Y. Supp. 49. The charter of that city provided that:

"The street commissioner * * * shall appoint two superintendents of streets * * * who shall hold their places during the pleasure of the commissioner, and shall perform such services as the street commissioner may direct."

The commissioner appointed the relator, Jones, to be one of the superintendents of streets, and later removed him and appointed the defendant Baker in his place. Jones was an honorably discharged volunteer in the fire department, and hence was as privileged from removal as the relator herein unless he was a deputy of the street commissioner or of that department. The court held that the superintendent of streets was the deputy of the commissioner, and hence that the removal of Jones and the appointment of Baker in his place was legal. Justice Landon in writing the opinion said:

"The commissioner may be called the director, the superintendents the performers of his directions, in respect to these duties. When we speak of one officer as the deputy of another, we mean that one is deputed to act in the name and right of the other, like an agent for his principal. Doubtless we are all apt to think that whatever the principal can do his deputy can also do. We should think so in this case, if, instead of naming the subordinate officer a superintendent of streets, he had been named deputy commissioner. But clearly whatever the commissioner directs the superintendent to do he could do himself if he chose to do it, and he cannot direct him to do anything which he might not rightfully do himself; so that, in giving the superintendent directions, he deputes him to perform some part of his own functions, and to that extent the superintendent is the commissioner's deputy. Why is it that the statute does not specify the services which the superintendent is to perform, and furnishes him with no chart of duty, except the directions of the street commissioner? Plainly in order that the commissioner should be respon-

sible to the people,. and the superintendents to the commissioner, to that end the relations between the commissioner and his superintendents may be as confidential as the nature of the case and the personal qualities of the officials will admit—certainly not less confidential than the relation of a private secretary or chief clerk."

The same conclusion was reached in the case of People ex rel. Rossney v. Armbruster et al., 59 Hun, 587, 13 N. Y. Supp. 942. Rossney was a veteran of the Civil War, and was superintendent of streets of the city of Rochester under appointment of the defendants, who constituted the executive board of the city, and was removed from office without charges being preferred and without a hearing, and another person was appointed in his place. The defendants as such executive board had control of the construction, improvement, and repairing of streets, and by the city charter were authorized to "appoint and at pleasure remove a superintendent of streets, fix his compensation, and prescribe his duties," and the superintendent of streets was required to act under the direction of the executive board. The court held that the executive board was a department of the city government, and that the relator as superintendent of streets was a deputy of that department, and hence by the terms of the statute was not included within the class of persons who could not be removed except for cause shown and a hearing had, and therefore that the summary removal of Rossney and the appointment of another person as superintendent of streets was legal.

The reason for this exception of an officer who is in effect a deputy from the effect of the provisions of section 22 forbidding the summary removal of a veteran is apparent. The commissioner of public works who is required to give an official bond is held directly responsible for the proper execution by the superintendent of streets of his duties, inasmuch as such duties are made by the charter primarily the duties of the commissioner of public works. It was therefore considered by the Legislature no more than just that an official should have the unlimited power of appointment and removal of a subordinate officer for whose performance of duty the appointing officer was to be himself held responsible. Hence the statute excepted from its limitation upon removal the position of deputy of any official or department, and for a like reason the positions of private secretary and cashier also.

The views above expressed lead to a denial of the application for a writ of mandamus. As the proceeding was instituted in good faith to determine a question not heretofore the subject of judicial decision, the denial of the application is without costs against the relator.