## JOSEPH A. PRENTICE v. TOWN OF MANCHESTER

SUPERIOR COURT     HARTFORD COUNTY     FILE NO. 80662

Memorandum filed March 9, 1949

*Pelgrift, Dodd, Blumenfeld & Nair,* of Hartford, for the Plaintiff.

*Raymond A. Johnson,* of Manchester, for the Defendant.

ALCORN, J. The plaintiff seeks to recover salary, at the rate of $2400 per year, as a detective sergeant of the Manchester police department since July 6, 1943. Upon the trial, the parties agreed that the plaintiff has never been removed or dismissed as a member of the police department by any action of the defend-ant's board of police commissioners. The defense, in addition to denials, is that the plaintiff abandoned his position and that he released the defendant from any claim for services.

The plaintiff joined the police department as a supernumerary in 1926, became a patrolman in 1928, and a detective sergeant in November, 1941, at a salary of $2400 per year. On April 8, 1942, he was given an indefinite leave of absence to enter the service of the federal bureau of investigation and was out of the state thereafter for several months. While he was engaged in this activity the defendant's board of police commissioners, here-inafter referred to as "the board," voted, on October 29, 1942, that he "be called back to the department as Deputy Chief on a six months probationary period." He was notified of this vote "to take effect as soon as you can arrange for your release from the F. B. I." The plaintiff accepted the appointment as deputy chief effective as of December 1, 1942, and began work on that date with a badge, but no specific duties attached to his position.

On January 5, 1943, the board defined the duties of deputy chief, in substance, to be to discharge the duties of chief in the latter's absence or disability, to have general supervision of the department under direction of the chief and the authority and duty of the latter in his absence, to have hours of active duty fixed by the chief, and to be responsible for enforcing laws, or-dinances and rules of the department and maintaining discipline and efficiency in the department.

The personnel of the police department then numbered six-teen, of whom nine were patrolmen. The chief was on active duty or call twenty-four hours a day and there was no occasion for the plaintiff to perform any of the chief's functions. The department was shorthanded and the personnel was assigned as necessity required. For six months after December 1, 1942, the

plaintiff did the duties of a patrolman and utility officer along with the other members of the department. After the first two months he was assigned a patrol car but also covered walking beats upon occasion. On February 2, 1943, the abolition of the office of deputy chief was proposed and lost by a divided vote of the board.

On June 9, 1943, the plaintiff reported for duty at 6:15 p. m. and was assigned a walking beat on Main Street in the center of the town for that tour of duty. Until then the plaintiff had not complained of the duties assigned him and had had no differences with his superiors. On this occasion, however, he promptly went home and telephoned the chairman of the board. The chairman and another member of the board came to his home and he made verbal complaint of the conditions of his work, principally the walking beat. They told him to put his complaint in writing and did not require him to carry out his assigned duty.

The following morning the chief telephoned the plaintiff and inquired why he had not covered his beat the night before. The plaintiff replied that he would not walk a beat. The chief reasoned with him about the department being shorthanded. The plaintiff replied with sharp words, said he was "through," and hung up the phone.

On June 11 the plaintiff made formal written complaint to the board of his grievances, directed principally against the chief and concluding, "I will not stand for, I will not be abused, insulted or misused by him in the future." On June 15 the chief preferred formal charges against the plaintiff for conduct unbecoming an officer and disobedience of orders. These were considered by the board at a meeting on June 25 at which the contestants were heard, and again on July 2, at which time the plaintiff was exonerated of the charges made against him. At the meeting of July 2, the suggestion to abolish the office of deputy chief was revived and the position was abolished as of that date.

The plaintiff never reported for duty at police headquarters after the incident of June 9, and in July he surrendered his police equipment. On July 6 he was formally notified of the abolition of the office of deputy chief. On July 19 he appeared before the board and presented a claim for vacation pay in 1941, pay for a two-week vacation voted him on June 25, 1943, and a small expense item, totaling in all $177. This was approved, as well as pay for nine days in June, upon condition that he sign a release,

which he agreed to do. The amount was paid him and on July 19 he signed a general release of "any or all claims which I may have or ought to have against said Town from the beginning of the world to this date."

About October, 1943, he opened a riding stable, which he operated for about two years, and since then he has acted as general utility man at a convalescent home operated by his wife. In October, 1943, he applied unsuccessfully for the position of chief of police in Bloomfield. He also applied, without success, for a like position in Wethersfield, and for a police position at Bradley Field; he worked for a few days as a guard at the state prison, and sought, but did not obtain, a position as salesman for an insurance company. He likewise applied to the defendant, without success, for reinstatement as detective sergeant, on September 27, 1943, October 4, 1944, and February 7, 1945. Finally, in October, 1946, he applied for reinstatement as patrolman and this was denied. He brought an action returnable to the Court of Common Pleas in February, 1947, in which he sought to appeal from the action of the board in failing to reinstate him, and the action was dismissed for lack of jurisdiction. No. 46375, Court of Common Pleas, Hartford County. In September, 1947, the present action was brought.

This lengthy recital serves to demonstrate certain conclusions which are inescapable. The board of police commissioners is the authority empowered to appoint police officers and define their duties. 18 Spec. Laws 172; 24 Spec. Laws 223. The office of deputy chief which they created and which the plaintiff accepted on December 1, 1942, was temporary and could be abolished by the board. *State ex rel. Rylands* v. *Pinkerman,* 63 Conn. 176, 196. In accepting the position, the plaintiff is presumed to have known the power of the board touching his appointment. *Samis* v. *King,* 40 Conn. 298, 310. Consequently, he took a position which he knew to be temporary or "probationary" and which he legally knew the board had power to abolish. By accepting the appointment he relinquished any claim to office under his former appointment as detective sergeant. *Farrell* v. *Bridgeport,* 45 Conn. 191, 193. At the same time, his acceptance bound him to no contractual service and he could lay down his trust at his pleasure. *Farrell* v. *Bridgeport,* supra, 195; *McDonald* v. *New Haven,* 94 Conn. 403, 411.

Only two months after he entered upon the office, its abolition was under discussion but it was not then dispensed with. The plaintiff then continued in the office until the incident of June

9, 1943. The plaintiff's actions and declaration that he was "through" on that date, coupled with the chronology of events following, clearly showed his intention to abandon his position. *Glotzer* v. *Keyes*, 125 Conn. 227, 233. He took other employ- ment, returned his equipment, composed his financial differences with the defendant, and not only failed to report for duty but applied for responsible police positions elsewhere, as well as subsequently seeking "reinstatement" with the defendant's de- partment. He was exonerated by the board with respect to the only charges made against him by his chief, was at no time sus- pended or dismissed, and consequently has no basis for claiming that a tender of services would have been a futility and is there- fore to be excused. *McDermott* v. *New Haven*, 107 Conn. 451, 454. It is to be noted that he did not avail himself of any legal action appropriate to test his incumbency of any office in the de- partment. That failure looms large in the light of this belated attempt to collect salary which normally belongs only to those officers who both obtain and exercise their offices. *Farrell* v. *Bridgeport*, supra, 195.

After he had declared he was "through," the board abolished the office of deputy chief, as it had the right to do. In view of its temporary nature, the fact that its abolition was under con- sideration before any friction arose, and the plaintiff's prior re- linquishment of the office, the action of the board is not to be construed as an effort to remove him. *State ex rel. Rylands* v. *Pinkerman*, supra, 195.

It is unnecessary to consider the legal import of the release signed by the plaintiff in the light of his abandonment of the office of deputy chief, the abolition of the office itself, and the absence of any basis for awarding him the salary which he seeks as a detective sergeant.

Enter judgment for the defendant.