THE STATE, EX REL. JOHN KENNY, PROSECUTOR, v.
ROBERT S. HUDSPETH.

1. An appointment to and acceptance of an office is not a contract. Neither the office nor its emoluments are property, and it is competent for the legislative department of the government to remove the incumbent from his office before the expiration of the term for which he was appointed or elected, unless such legislation is interdicted by force of some constitutional prescription.

2. Section 1 of article 6 of the constitution, under the title of "Judiciary," ordains that "The judicial power shall be vested in a Court of Errors and Appeals in the last resort in all causes as heretofore, a Court for the Trial of Impeachments, a Court of Chancery, a Prerogative Court, a Supreme Court, Circuit Courts and such inferior courts as now exist and as may be hereafter ordained and established by law; which inferior courts the legislature may alter or abolish as the public good shall require." *Held*—

(1) That by this enumeration the courts mentioned became constitutional courts—that is, courts that could not be altered or abolished except by the alteration of the instrument that created them.

(2) That the Inferior Courts of Common Pleas, not being mentioned in the enumeration of the courts in which the judicial power of the state was vested, are inferior courts within the meaning of this clause of the constitution.

3. The relator was commissioned a judge of the Inferior Court of Common Pleas of Hudson county on the 1st day of April, 1892, for the full term of five years. The act of March 26th, 1896 (*Pamph. L.*, *p.* 149), provided that the law or president judges then in office should continue in office for the terms for which they were respectively appointed, and that the terms of office of all other judges of the said courts should end on the 31st day of March, 1896. The relator was one of that class of judges whose term of office was terminated within the purview of the act. *Held*, that this enactment was valid and constitutional.

4. *Schalk* v. *Wrightson*, 29 *Vroom* 50, distinguished.

On application for a *mandamus*.

Argued at June Term, 1896, before Justices DEPUE, VAN SYCKEL and GUMMERE.

For the relator, *Allan L. McDermott* and *Chauncy H. Beasley*.

*Contra, Foster M. Voorhees* and *Frank Bergen*.

The opinion of the court was delivered by

DEPUE, J. The relator was commissioned a judge of the Inferior Court of Common Pleas of Hudson county on the 1st day of April, 1892, for the full term of five years. He duly qualified and entered upon the duties of his office. His term of office, in virtue of his appointment, would have continued until the 1st day of April, 1897.

By an act entitled "An act to reduce the number of judges of the Inferior Court of Common Pleas, Courts of Oyer and Terminer and General Jail Delivery, Orphans' Courts, Courts

of General Quarter Sessions of the Peace and Special Sessions in the several counties of this state, and to fix the salaries and provide for the appointment of the judges of said courts," approved March 26th, 1896, it was provided that the law or president judges then in office should continue in office for the terms for which they were respectively appointed, and that the terms of office of all other judges of the said courts should end on the 31st of March, 1896. The relator is one of that class of judges whose term of office was terminated within the purview of the act. The validity of this act is brought in question by this suit.

The appointment to a public office is not a contract the impairment of the obligation of which is forbidden by the federal constitution. *Butler* v. *Pennsylvania*, 10 *How.* 402. An appointment to office is neither a contract nor is the office or its prospective emoluments the property of the incumbent. Upon general principles of law the office itself and its emoluments are within the control of the government, and the legislative branch of the government, whenever, in its judgment, public policy requires it, may declare the office vacant or transfer its duties to another officer, although the effect may be to remove the officer before the expiration of the term for which he was appointed. *City of Hoboken* v. *Gear*, 3 *Dutcher* 265 ; *Conner* v. *Mayor*, 1 *Seld.* 285 ; *People* v. *Warner*, 7 *Hill* 81 ; *S. C.*, 2 *Denio* 272 ; *Smith* v. *Mayor*, 37 *N. Y.* 518 ; *Taft* v. *Otis*, 3 *Gray* 126 ; *Thr. Pub. Off.*, § 19 ; *Mech. Pub. Off.*, §§ 463–465 ; 8 *Rul. Cas.* 266, and cases cited. If there be any limitation upon the power of the legislative department of the government over the tenure of public offices, it must be found in a constitutional inhibition, arising from the fact that by constitutional prescription the tenure and term of office are put beyond legislative control.

Section 1 of article 6 of the constitution, under the title of "Judiciary," ordains that "The judicial power shall be vested in a Court of Errors and Appeals in the last resort in all causes as heretofore, a Court for the Trial of Impeachments, a Court of Chancery, a Prerogative Court, a Supreme Court,

Circuit Courts, and such inferior courts as now exist and as may be hereafter ordained and established by law; which inferior courts the legislature may alter or abolish as the public good shall require." By this enumeration the courts mentioned became constitutional courts—that is, courts that could not be altered or abolished except by the alteration of the instrument that created them. The Inferior Courts of Common Pleas are not mentioned in the enumeration of the courts in which the judicial power of the state was vested. These courts were always regarded as inferior courts. They are so styled in the first constitution and in our present constitution, and in the statutes and laws of the state. They are comprehended in this article of the constitution under the designation of inferior courts that existed at the time the constitution was adopted. With respect to courts of this class, the constitution, by an affirmative grant of power, vested the legislative department with the capacity to alter or abolish these judicial tribunals as in the judgment of the legislature the public good might require, thus subjecting these courts to such legislative control as the legislative department has by the general law over the tenure, emoluments and terms of offices, where these incidents are not fixed by constitutional prescriptions.

To overcome and set aside the force and effect of the express grant of power to the legislature over these courts, the counsel of the relator invoke section 6 of article 7 and section 2 of article 7 of the constitution. The first of these sections provides (1) that "there shall be no more than five judges of the Court of Common Pleas in each county of this state, after the terms of the judges of said court now in office shall terminate. (2) One judge for each county shall be appointed every year, and no more, except to fill vacancies for the unexpired term only. (3) The commissions for the first appointments of judges of said court shall bear date and take effect on the first day of April next; and all subsequent commissions for judges of said court shall bear date and take effect on the first day of April in every successive year, except com-

missions to fill vacancies, which shall bear date and take effect when issued." Section 2 of article 7 (as amended in 1875) provides (1) "that the judges of the Inferior Court of Common Pleas shall be nominated by the governor and appointed by him, with the advice and consent of the senate. (2) They shall hold their offices for five years; but when appointed to fill vacancies they shall hold for the unexpired term only."

On those constitutional provisions the relator's counsel contend that the legislature cannot alter this court so that one judge shall not be appointed every year; nor so that the commission of a judge shall not bear date and take effect on the 1st day of April in each successive year; nor so that the judges appointed shall not hold their office for five years. These contentions are within the terms of the two constitutional provisions on which they rest. But it will be observed that if these two sections are to have a dominating effect upon the subject there would always be five judges of this court in office by constitutional mandate, and the power granted to the legislature by section 1 of article 6 would become nugatory. In that situation, there being always five judges in office with the constitutional mandate to keep up the number by annual appointments for the prescribed terms, these courts could never be abolished by the legislature. In that view the framers of the constitution, in one article, granted to the legislature power to abolish these courts, and by other articles so fixed the tenure of the judges that the power to abolish was abrogated.

I am unwilling to concur in a construction that leads to such a result. The power is conferred upon or reserved to the legislative department of the government. It relates to a subject which, under our form of government, lies within the domain of the functions of a legislature. It is expressed in terms as comprehensive as language furnishes—"to alter or abolish"—and excludes all limitations upon the exercise of the power by the prescription that the power may or may not be exercised, "as the public good may require." So long as

the number of judges of this court was maintained at five, the provisions with respect to annual appointment and terms of service had full force. But when the legislature exercised the power to alter or abolish, those provisions must yield to conform to the changes made by the legislative authority. Such has been the practical construction and adaptation of these several constitutional provisions for a long period.

As early as 1854 a joint resolution was passed by the legislature authorizing the appointment of commissioners to report amendments of the judicial system of this state. *Pamph. L.,* *p.* 544. These commissioners made report to the legislature of 1855 of a series of acts making extensive and radical changes in our judicial system and course of procedure. The first of the series of acts in their report is an act entitled "An act to reorganize the courts of law." The fourth section of the act provided that the justices of the Supreme Court should be *ex officio* judges of the Inferior Court of Common Pleas; and by the fifth section it was provided that after the 4th of July then next there should be no more than three judges of the Inferior Court of Common Pleas in each county, exclusive of the justices of the Supreme Court. This act was passed by the legislature February 9th, 1855. *Pamph. L.,* *p.* 17. The two sections quoted have been in force since the act was passed. They appear in the revision of 1875 as section 42, page 219, and section 59, page 221. These sections contain radical changes in the constitution of the court. By this act the number of judges of the Inferior Court of Common Pleas was reduced from five to three, and the appointment of one judge in every year became impracticable. The alteration effected by this legislation can be vindicated only under the legislative power over these courts.

The commissioners by whom the act of 1855 was reported and recommended were Joseph F. Randolph, previously a justice of the Supreme Court; Martin Ryerson, subsequently a justice of the Supreme Court, and John P. Stockton, the present attorney-general. Of the eminence of these commissioners in their profession, and their familiarity with the

rules of constitutional construction, it would be superfluous to speak. Two of them, Messrs. Randolph and Ryerson, were members of the convention which framed the constitution of 1844, and Judge Randolph took a prominent part in the discussions upon the vexed question of the constitution of these courts, which was disposed of by organizing the courts as constituted by section 6 of article 4 and section 2 of article 7 as the constitution then stood, retaining in the legislature the power to alter or abolish, as the public good might require. The commissioners, in their report to the legislature, in recommending the limitation of the number of judges of the Court of Common Pleas to three in each county, and the consequent saving of expense to the counties, say, " the constitution gives the legislature full power to alter or abolish the county courts, as the public good may require. With this broad grant of power we can see no constitutional objection in the way of the changes we propose." *Senate Journal* 1855, *p.* 41.

We have in the action of these commissioners, of whom two were members of the constitutional convention which framed the constitution, what may be considered a contemporaneous construction. And for upwards of forty years justices of the Supreme Court have sat in the Common Pleas and performed the duties of judges of that court. We have, therefore, contemporaneous construction and long usage, approved by the legislative and judicial departments of the government, in exposition of these several constitutional provisions. The terms in which the power of the legislature over these courts is expressed are so explicit that when the power is exercised by the legislature other constitutional prescriptions relating to the tenure and terms of office of the incumbents, which would otherwise restrain or embarrass the exercise of such power, must give way. If there be any doubt on that subject, contemporaneous exposition and long usage must resolve that doubt. In the recent case in this court in which the power of the legislature to deprive the executive of his prerogative of appointing the judges of these courts was involved, the power of the legislature to reduce

the number of the judges in each county to any number less than five was conceded. *Schalk* v. *Wrightson,* 29 *Vroom* 50. The constitutional provision applicable to that case was the amendment to the constitution adopted in 1875, which conferred the appointment of judges of these courts upon the governor, with the advice and consent of the senate. In the Schalk case the act of 1895 was held by this court to be unconstitutional, for the reason that it deprived the governor of the power of appointing these judges. The act now under consideration does not interfere with the prerogative of the governor in that respect.

The public policy sought to be accomplished by this legislation was the exclusion of what is known as the lay element from these courts, constituting the courts of law judges. The act of 1855 retained the judges who were in office when the act was passed until the expiration of the terms for which they were appointed. The legislature, in passing the present act, appears to have deemed it proper to vacate the offices of the lay judges who were then in commission, in order to effectuate the policy upon which this legislation was founded. With the justice and expediency of this feature of the act of 1896 we can have no concern. The power of the legislature in the premises is the sole issue that is committed to the judiciary. We have seen that an appointment to and acceptance of an office is not a contract ; that neither the office nor its emoluments are property in the incumbent, and that it is competent for the legislative department of the government to remove the incumbent from his office before the expiration of the term for which he was appointed or elected, unless such legislation is interdicted by force of some constitutional prescription. The act of 1891, which removed the judges of the District Courts of this state from office, is a recent example of the exercise of this power by the legislature. *Gen. Stat., p.* 1264. It appears from the state of the case that the term of office for which the relator was commissioned would not expire until April, 1899, and that the terms of other judges of this class in the state would expire in 1897, 1898

and 1899. It may have been deemed by the legislature that, on the score of economy or other considerations of public policy, the public good required an immediate change in the contemplated constitution of these courts, instead of postponing the operation of this legislation in the several counties of this state until the terms of office of the judges severally expired. No reason can be assigned for giving effect to the constitutional provision for a five years' term of office which will not apply with equal force and effect to that other provision of the constitution, that one judge for each county shall be appointed every year, thus superseding the grant of power to the legislature to alter or abolish these courts as the public good should require.

The rule to show cause should be discharged.