[No. 3,752.]

## DEWITT C. LAWRENCE v. NEWTON BOOTH, GOVERNOR, DRURY MELONE, SECRETARY OF STATE, AND JOHN L. LOVE, ATTORNEY GENERAL.

COST OF PUBLISHING SUMMONS. — In an action brought by the State, under the Act of 1868, for the sale of lands belonging to the State, to annul a certificate of purchase for failure to make payment, if summons is published, the cost of publishing the same must be taxed in the costs, and a judgment rendered against the defendant therefor.

IDEM. — If such judgment cannot be collected by execution out of the defendant's property, and if the lands are school lands, the cost of publication must be paid by the State out of the General Fund.

IDEM. — In such case, the Board of Examiners must audit the claim for publishing summons at the amount taxed by the District Court, even if no specific appropriation has been made by the Legislature therefor.

APPLICATION for writ of mandate to the Supreme Court.

Under the Act of March 28th, 1868, for the management and sale of the lands belonging to the State, certain lands in Kern County were sold to various parties by the State, and the purchasers paid into the Treasury of the State twenty per cent of the purchase money and the first year's interest, amounting in each case to one hundred and twelve dollars, and received therefor certificates of purchase. Afterwards, the purchasers having failed to pay the balance of the purchase money for the lands and the interest thereon, they became delinquent, and the District Attorney commenced an action in the District Court against each of the

delinquent purchasers to foreclose their interests in the land, and to annul the certificates of purchase. The names of the delinquents being unknown, the Court ordered that the service of summons in each case be made by publication in the *Havilah Miner*, a newspaper published in Kern County by the petitioner. Judgments were rendered against the defendants, and in favor of the State, and in each case the cost of publication of the summons was taxed at thirty dollars, there being eighty-two cases. Executions were issued and returned unsatisfied. In December, 1872, the petitioner presented his claim for two thousand four hundred and sixty dollars, to the State Board of Examiners, for the costs as taxed by the District Court. The Board of Examiners submitted the claim to the State Printing Expert, who reduced the amount to one thousand two hundred and thirty dollars, as the amount which the work was, in his judgment, reasonably worth. The Board allowed the claim for the reduced amount, and refused to approve it for the original sum. The claimant then made this application for a peremptory mandamus.

*Samuel Cross* and *T. B. McFarland*, for Petitioner, argued that the judgment of the District Court is conclusive, citing section sixty-seven of the Act of 1868, and section six hundred and sixty of the Political Code.

*John L. Love, Attorney General*, for Respondents, replied that the section of the statute cited was intended merely to authorize a claim against the State, not a judgment, and that therefore it was within the discretion of the Board of Examiners to reduce the claim.

By the Court, NILES, J. :

Application for a mandamus to compel the State Board of Examiners to allow the claim of the petitioner for the costs

of publication of summons in suits brought to foreclose the interests of defaulting purchasers of school land, to the full amount taxed by the District Court.

The case turns upon the construction of the sixty-seventh section of the Act to provide " for the management and sale of the lands belonging to the State." (Stats. 1867-8, p. 527.) In prescribing the mode of procedure against a defaulting purchaser of State lands, it provides for the taxation by the Court against the defendant of all expenses and cost of the proceedings, and the issuance of execution therefor. As we construe the section, the cost of publication of summons is to be included in the taxed costs, and, therefore, in the judgment entered against the defendant. The entire amount of the judgment is to be collected of the defendant by execution, if possible ; but if sufficient property of the defendant be not found, and the execution be returned unsatisfied, and if the lands described be school lands, the cost of publication shall become a charge against the State, and shall be paid out of the General Fund.

It is claimed by the respondents that the judgment of the District Court is not conclusive as regards the amount allowed for costs of publication, but that it is the subject of examination by the Board of Examiners, and may be reduced or disallowed as other claims against the State. We do not think that the powers of the Board extend so far. Aside from these provisions of the statute, it would seem that the State, which was a party to the suits in which the judgments were rendered, and through its specially authorized agent procured their rendition, ought to be concluded by their terms, equally with the defendant. At all events, the requirement of the statute, as we construe it, is positive, that the cost of publication, *as taxed by the Court*, shall be paid by the State. This leaves to the auditing officers no discretion as to the amount for which the claim shall be allowed. It must still pass through the hands of the Board of Exam-

iners, in the ordinary routine of business, but the amount allowed can be no other than that fixed by the judgment of the Court.

It is not material whether any specific appropriation has been made by the Legislature for payment of claims of this character, or not. In either case the Board are required to audit the claim. (Political Code, Secs. 660, 663.)

We regret that we are forced to these conclusions. The demand disclosed by this record appears to have been grossly exorbitant, and we cannot avoid the conviction that the District Attorney was neglectful of the interest of the State which he represented when he procured and allowed this claim to be established against it; for though the judgments were formally against the defendants in the suits to foreclose, the claim was substantially and practically against the State. But we can only administer the law as we find it, leaving its defects to be remedied by legislative action.

Let a peremptory writ issue requiring the respondents to audit the claim of the petitioner for the amount of two thousand four hundred and sixty dollars.

Mr. Chief Justice WALLACE did not express an opinion.