## MARY E. REYNOLDS McDONALD *vs.* THE CITY OF NEW HAVEN

Third Judicial District, Bridgeport, October Term, 1919.
WHEELER, BEACH, GAGER, CASE and CURTIS, Js.

A member of the fire department of the City of New Haven, regularly appointed under the provisions of its charter, while discharging his duties is engaged in the performance of a public governmental act for the general welfare, and does not hold his position under a "contract of service"; and therefore is not an "employee" of the city as defined by our Workmen's Compensation Act.

An appointment to a public office and its acceptance by the appointee does not create a contract.

The right to compensation is a creation of the statute and courts are powerless to extend its provisions to cases not fairly within the scope of the Act.

Argued November 6th, 1919—decided March 5th, 1920.

APPEAL by both parties from the rulings of the Compensation Commissioner of the third district in refusing compensation to the plaintiff, taken to and reserved by the Superior Court in New Haven County, *Warner, J.,* upon the findings of the Commissioner, for the advice of this court. *Superior Court advised to affirm the action of the Commissioner and dismiss the appeal.*

*Arthur B. O'Keefe,* for the plaintiff.

*William L. Bennett* and *Thomas R. Robinson,* for the defendant.

GAGER, J. McDonald, the deceased husband of the claimant, was a fireman regularly appointed, under the provisions of the charter of the City of New Haven, as a member of its fire department. While discharging his duties in endeavoring to extinguish a fire he received a sudden drenching with water, and this drenching arose out of and in the course of the discharge of his duties as fireman. The drenching so received caused lobar pneumonia, and from this disease McDonald died, eleven days after the drenching. McDonald's surviving wife makes claim under the Compensation Act against the City as a dependent of the deceased. The Commissioner held that the lobar pneumonia arising from the drenching and resulting in the death, constituted an injury within the meaning of the Act, but that McDonald was not an employee of the City within the meaning of the Act.

Our Workmen's Compensation Act applies only in situations where the persons are in the "mutual relation

of employer and employee." General Statutes, § 5341. "Employer" is defined by the statute to mean "any person, corporation, firm, partnership or joint stock association, the State and any public corporation within the State using the services of another for pay." "Employee" is defined as meaning "any person who has entered into or works under any contract of service or apprenticeship with an employer." General Statutes, § 5388.

The first question arising upon the appeal is whether a regularly appointed member of the city fire department is an employee of the City? By taking the position of a fireman, did he enter into or work under any contract of service with the City as his employer? The Act in terms requires a contract relationship of employer and employee, and its privileges as well as duties are limited to those sustaining such legal relationship. Workmen's compensation, in the legal sense, is a creation of the statute, and courts have no power to extend its provisions to cases not fairly within the scope of the given Act. If the given Act is broader or narrower than what a sound public policy requires, the remedy lies with the legislature.

The Compensation Acts of the various States are by no means uniform in designating those entitled to compensation. For illustration: The Act in Massachusetts provides that cities and towns may pay compensation to such laborers, workmen and mechanics employed by them as receive injuries, etc. Under this Act it was held that a hoseman, a member of the fire department, a permanent fire force, stationed at an engine house, was not a laborer, workman or mechanic, and that these words were to be taken in their ordinary lexical sense, which excluded the trained and disciplined force comprising the Boston fire department. This case was decided upon the limitation as to kind of

work done, and this Act is narrower in its scope than our Act which is based upon contract relationship alone. In Minnesota, on the other hand, both policemen and firemen are entitled to the benefits of the compensation law under a statute which provides that employees and workmen shall be construed to mean, among other things, every person in the service of a city under any appointment, or contract for hire. *State ex rel. Duluth* v. *District Court*, 134 Minn. 28, 158 N. W. 791. In Michigan the statute excepts from its operation "any official of the State, or of any county, city, township, incorporated village or school district." Under this statute it was held that a policeman was an officer and not an employee. In this case the only provision for the appointment of policemen was that authorizing the commissioners to engage such employees as might be necessary. *Blynn* v. *City of Pontiac*, 185 Mich. 35, 151 N. W. 681. These cases, based on different provisions, emphasize the necessity of confining our attention to the language of our own Act, which, unlike those above referred to, makes the one and only test "mutual relation of employer and employee."

It is to be observed that the statutory definition of the word "employee," as used in the Compensation Act, is narrower in its scope than the general lexical definition. To "employ" is "to engage . . . or keep for or in service or duty; procure or retain the services of." The synonyms are "hire, use." "Employee" is "a person who is employed; one who works for wages or a salary; one who is engaged in the service of or is employed by another." Standard Dictionary, words "employ," "employee." In this broad sense it may be conceded that a fireman is an employee of the city through its fire department; that is, he is in the service of the city under the provisions of the charter with the duty of suppressing fires, for a compensation. But our

statute is founded upon the theory of a contract of service existing between employee and employer. "There must be a real contract of employment, either express or implied, or there is no 'employee' within the definition and meaning of the statute." *Sibley* v. *State*, 89 Conn. 682, 687, 96 Atl. 161. It is apparent, then, that although the statutory definition of employer as including "the State and any public corporation within the State using the services of another for pay," is broad enough to include a municipal corporation, yet the definition of employee as one whose services are secured as a result of a contract, express or implied, restricts the liability of the State or a public corporation to cases where it has secured the services of another by contract alone. It is not necessarily the character of the service undertaken, but rather how the service is secured by the municipal corporation, which determines whether the person injured is within the terms of our Act.

The source of the power of New Haven, both as to the organization of police and fire departments, is contained in its charter, in form a public Act. 13 Special Laws, p. 388. It is therefore necessary to look to the language of the charter to determine the nature of the relation between the members of the fire department and the city. The charter provides for a substantially similar organization of the police department and the fire department, and some aid may be gained by making this comparison. Each department is under the control of a board of commissioners; the members of each department are appointed; in the police department all appointments and promotions, except the chief, are made by the board in accordance with the rules of the civil service board. Charter, § 47, as amended April 9th, 1901, and May 22d, 1907. The board fixes the pay or compensation of all members of the department except the chief.

Charter, § 50. In the same way in the fire department, all appointments and promotions, except the chief, are made by the board in accordance with the rules of the civil service board. Section 55 as amended July 19th, 1905, and September 12th, 1911. And the compensation of the officers and employees of said department, except the chief, is determined by the board. Section 55. Then there are certain provisions common to both departments. By § 59 the board of each department "shall have power to prescribe and define the duties of the members of such departments, and to make all rules necessary for the proper government thereof and the appointment of officers and employes." By § 60 the chief of each department "shall assign to duty all the members of his department, making such changes from time to time as in his judgment the efficiency of his department may require. He shall have power to suspend, without pay, any member of the regular force" [under certain regulations not now material]. Section 64 provides that "each of said boards of commissioners shall have sole power of appointment and promotion of all officers and employes of their respective departments, under such rules and regulations as they may adopt for the purpose, except where otherwise provided." By § 65, "each of said boards of commissioners shall have power, for cause, after a hearing on charges made in writing, to remove, reduce in rank, or suspend without pay, any officer or employe in its department that it has power to appoint. . . . Any officer or employe dismissed may make his application to any judge of the Superior Court within and for New Haven County in the nature of an appeal from such order of the board of commissioners," upon certain proceedings stated. Under § 66 as amended May 3d, 1901, a Policeman's Relief Fund and a Fireman's Relief Fund are established.

By subsections 5 and 6 of § 66, two per cent per annum on the salaries of members of the respective departments is assessed for the benefit of their respective funds. Section 69 provides that the respective boards, with the mayor's approval, "may permanently retire any member of the department who, while in actual performance of duty and by reason of the performance of such duty, and without fault and misconduct on his part, shall have become permanently disabled, physically or mentally, so as to be entirely unfited to perform such duties; and either of said boards may cause to be paid from the fund of said department to said member during his lifetime . . . a sum not greater than one-half nor less than one-fourth of his previous compensation." Section 70 provides that the board of each department may pay a death benefit of not exceeding $2,000 from the fund "to the widow of, or other person or persons dependent upon, any member of such department who shall have been killed while in the actual performance of duty, or shall have died from the effects of any injury received while in the actual discharge of such duty." By § 71 all members of the retired lists in either department shall be subject to the orders of the board of commissioners of such department, who may require a re-examination of any member, and if reported capable of performing duty, he may be restored to service in the department.

The provisions for the civil service board provide for competitive examinations, and appointments are to be determined within certain limits by the results of such examination. Various terms are used when referring to the members of either department. The general term most in use appears to be "member" of the department. In § 55 of the charter it is provided that the department shall "consist of a chief, a fire marshal, a superintendent of fire alarm telegraph,

and such other officers and employes as the board of fire commissioners may from time to time prescribe." . In § 59, relating to both departments, it is said that the boards respectively "shall have power to prescribe and define the duties of the members of such departments, and to make all rules necessary for the proper government thereof and the appointment of officers and employes." In § 64 of the charter, as already quoted, each of said boards has sole power of appointment and promotion of all officers and employees of their respective departments. In § 66, with reference to the establishment of the pension funds, "members of the respective departments" is the designation. In the section on retirement, § 69, the language is "any member of the department," and the pension and death benefit funds are concerned with "members of their respective departments." We think the term "employee" as used is not indicative of all of the relationship existing between the city and the member. "Employee," "officers and employees," and "members," are used interchangeably as a general designation of the persons upon whom the duties of their respective departments are cast.

In a somewhat similar situation it was said in *Blynn* v. *City of Pontiac*, 185 Mich. 35, 44, 151 N. W. 681: "In view of the distinction clearly made in the sections with reference to the police department, the word 'employees' used in this section should not be held to have been used in any other than the comprehensive sense of including all persons serving the public in these departments, whether filling an appointive office or merely occupying a temporary contractual relation to the municipality as an employee." We think a reading of the charter makes it quite clear that the use of the term "employee" is not at all decisive of the question to be answered here, which is whether the service is

rendered under a contract of employment. There is, then, no special significance to be attached to the terminology of the charter, and we return at once to the question whether the given person, whether called in the charter "officer, member, or employee," obtained his position by virtue of a contract of employment.

The charter places the police and fire departments upon practically the same basis in all essentials relating to the organization of the departments and the method of securing the persons necessary to carry out the purposes of the department. In this respect whatever is true of one department is true of the other. The members of each department while engaged in the specific duties of the department are engaged in a public, governmental act for the public good. *Jewett* v. *New Haven*, 38 Conn. 368; *Judson* v. *Winsted*, 80 Conn. 384, 386, 68 Atl. 999; *Pope* v. *New Haven*, 91 Conn. 79, 81, 99 Atl. 51; *Farrell* v. *Bridgeport*, 45 Conn. 191. In the *Farrell* case the charter of Bridgeport provided with respect to the police department that "the common council shall have the sole power of appointment and removal of the officers and members of said department." And such appointment and removal was to be upon the nomination or recommendation of the police commissioners. Section 64 of the Bridgeport charter as quoted in 45 Conn. p. 192. With reference to the relation between a member of the police department and the city, it was said in the same case (p. 195): "Again, a policeman of the city of Bridgeport is an arm of the law; he holds an office as a trust from the State; he is a preserver of the public peace; he is not the hired servant of a master; no contract relation exists between him and the city by which he is bound to its service; he can lay down his trust at any time according to his pleasure without exposing himself to an

action for damages for breach of contract." We think this applies equally to firemen.

In the leading case of *Hafford* v. *New Bedford,* 82 Mass. (16 Gray) 297, 302, it was said: "The members of the fire department of New Bedford, when acting in the discharge of their duties, are not servants or agents in the employment of the city, for whose conduct the city can be held liable; but they act rather as officers of the city, charged with the performance of a certain public duty or service; and no action will lie against the city for their negligence or improper conduct, while acting in the discharge of their official duty." This case was cited with approval in *Jewett* v. *New Haven,* 38 Conn. 368, and also was cited and followed in *Fisher* v. *Boston,* 104 Mass. 87, and we think is the established law of this State. To be sure, the present case is not one where the attempt is made to charge the city with liability for the conduct of its firemen, but the language of *Farrell* v. *Bridgeport,* 45 Conn. 195, is significant as to the relationship, where it is said of the policeman, "he is not the hired servant of a master; no contract relation exists between him and the city by which he is bound to its service." And it is from this point of view that a policeman or a fireman is deemed to be a public officer, in that as an officer of the city he is the arm of the State in the performance of a governmental duty, as distinguished from one who is, by some contract with the city, doing work private to the city not involving the performance of a governmental duty delegated to the city by the State. *Schmitt* v. *Dooling,* 145 Ky. 240, 140 S. W. 197, 27 Anno. Cases, 1913B, 1078.

The claimant, however, says in effect that, granting that McDonald, as fireman, was a public officer to the extent that he acts as an arm of the State in the performance of a governmental duty so that the principle

of *respondeat superior* does not arise from his relations with the city, the Act makes no distinction as to the character of his work, but only refers to the method of his employment. We therefore look a little further to see whether there is any contract relationship between the fireman and the city; even though, from the point of view of governmental agency, he may be held to be a public officer. As will be seen by reference to the charter provisions summarized above, the fireman becomes a member of the department as the result of an appointment by the named officials. "All appointments and promotions, except the chief, who shall be appointed by the mayor, shall be made by said board [of fire commissioners] in accordance with the rules of the civil service board." Charter, § 55.

Does such an appointment and acceptance create a contract of service? The cases are numerous that an appointment to a public office does not create a contract. *Sibley* v. *State*, 89 Conn. 682, 96 Atl. 161, goes far toward settling the question. It was there held that a sheriff holds his office not as an "employee" of the State, but as a public official under a trust from the State, which invests him with a portion of its sovereign power to be exercised in the interests of the public. This was a case of a constitutionally elected officer; but it makes no difference whether the officer is elected or appointed. The terms "elected" and "appointed" are in contrast to "employment" and "contract." *Seymour* v. *Over-River School District*, 53 Conn. 502, 3 Atl. 552; *State ex rel. Rylands* v. *Pinkerman*, 63 Conn. 176, 28 Atl. 110; *State ex rel. Stage* v. *Mackie*, 82 Conn. 398, 74 Atl. 759.

In *Ames* v. *Port Huron Log Driving & Booming Co.*, 11 Mich. 139, cited in Mechem on Public Officers, § 100, it was said (p. 147): "It is difficult to perceive by what process a public office can be obtained or exercised

without either election or appointment." In Mechem on Public Officers, § 102, "appointment," as used in this connection, means "the act of designation by the executive officer, board or body, to whom that power has been delegated, of the individual who is to exercise the functions of a given office." Chief Justice Marshall, in the often-cited case of *United States* v. *Maurice*, 2 Brock. 96, 26 Fed. Cas. No. 15,747, said: "If a duty be a continuing one, which is defined by rules prescribed by the government, and not by contract, which an individual is appointed by government to perform, who enters on the duties appertaining to his station, without any contract defining them, . . . it seems very ·difficult to distinguish such a charge or employment from an office, or the person who performs the duties from an officer."

In *People ex rel. Sweeney* v. *Sturgis*, 78 N. Y. App. Div. 460, 79 N. Y. Supp. 969, affirmed in 175 N. Y. 470, 67 N. E. 1088, the question arose under a statute regulating the hours of labor of employees, in which employee was defined as in that Act meaning "a mechanic, working man or laborer who works for another for hire," and it was decided that firemen did not come within this statute because there was no contract of hiring, and this is said as to the position of a regular fireman (p. 463): "The word 'hire' evidently does not relate to public officers or others holding positions under the city, who are included in the classified lists of the Civil Service Law, such as the uniformed members of the fire department who are appointed to position after rigid examination and from competitive lists. No contract of hiring is made with them."

In *Butler* v. *Pennsylvania*, 51 U. S. (10 How.) 402, 13 L. Ed. 472, it was held that the appointment by the governor of a canal commissioner did not constitute a contract within the constitutional provision as to laws

impairing the obligation of a contract. "An appointment to office is neither a contract nor is the office or its prospective emoluments the property of the incumbent." *State ex rel. Kenny* v. *Hudspeth,* 59 N. J. L. 320, 322, 36 Atl. 662. The case of *Uffert* v. *Vogt,* 65 N. J. L. 377, 47 Atl. 225, related to the office of receiver of taxes. The court, in holding that appointment to a municipal office did not create a contract, took occasion to compare at some length the different characteristics of appointment and contract (p. 380): "The appointment to a public office, for a definite term, and the acceptance of such office bears no analogy to a contract made between the government and an individual. In the latter the terms agreed upon define the rights and obligations of both parties, and neither may depart from them without the assent of the other. In the former both the rights and privileges as well as the duties of the appointee are prescribed by the government and not by agreement of the parties, and the government (in the absence of constitutional restriction), may at any time, and without the appointee's consent, abridge those rights and privileges or increase those duties, or change their character; or it may put an end to them before the expiration of the term, by abolishing the office. On the other hand, although the appointee may accept the office for a definite term, his acceptance does not bind him to serve out that term. He may resign, or otherwise determine his official relation, without incurring any liability to the government by so doing. So, too, if he be guilty of malfeasance or neglect of official duty, the remedy against him is not by civil suit for breach of contract, but by indictment or impeachment. ' Whether the officer be appointed immediately by the government or through the agency of a municipal corporation is immaterial. The duties to be performed, not the mode of appointment, constitute the test of his being a public officer.

Is he invested with any portion of political power, partaking in any degree in the administration of civil government, and performing duties which flow from sovereign authority? If so his office is a public office,' and his relation to the government is, in no sense, a contractual one." See, also, 29 Cyc. 1366; 4 Corpus Juris, p. 1405.

We have examined the cases upon which the claimant relies. In *McCarl* v. *Borough of Houston,* 263 Pa. St. 1, 106 Atl. 104, the court held that a borough policeman was an employee and entitled to recover under their Compensation Act, but that Act defined employee as one who "performs service for another for a valuable consideration." This language is considerably broader than the definition in our Act. In *State ex rel.* v. *Jennings,* 57 Ohio St. 415, 49 N. E. 404, the action was *quo warranto,* in behalf of firemen who had been appointed under an ordinance subsequently repealed, to oust a set of firemen hired under a later ordinance. The later ordinance provided that "the said council shall employ as many assistant firemen," etc. The court decided that the second set were not public officers, but simply in the employment of the city as laborers, and that their right to work for the city as laborers could not be challenged by *quo warranto.* The court admitted that the chief of the fire department was a public officer. The case is based on the Ohio statutes and the terms of the city ordinance, and the distinction between officers of the fire force and plain firemen within the organization.

It appears from the citations above that this court and the courts of Massachusetts, New York, and New Jersey, have ignored this distinction between officers within the force and the regular members of the force. The result reached may be right so far as *quo warranto* is concerned, for it has been held that "'there are grades

of positions denominated offices which do not rise to the dignity of being entitled to the notice of the attorney-general by information.'" *Blynn* v. *City of Pontiac,* 185 Mich. 35, 45, 151 N. W. 681. The Ohio decision can have little or no bearing upon the question as it arises under the New Haven charter and the established law of Connecticut with respect to the position of fireman. Further, as to the precise point here in question, to wit, whether à contract relation exists between the firemen and the city, the language of the ordinance in the Ohio case in terms provides for employment, while the New Haven charter is explicit in providing for appointment.

Firemen are members of a regularly organized governmental department. Their powers, rights, duties and privileges are determined by the State through a delegation of power to the city, and accrue to the individual through appointment to membership in the department. Members may be promoted, reduced in rank, suspended or dismissed, with certain rights of appeal. They may be retired from active duty, but they still remain subject to the orders of the board of commissioners, and may be recalled to duty. In case of retirement for disability incurred in the performance of their duty, they become entitled, out of the firemen's fund, to from one quarter to one half their previous compensation, payable monthly for life. Widows or dependents of firemen who lose life in the service, may receive a benefit from the fund of not over $2,000. None of the distinctive features and incidents of the fireman's position arise through contract. As a governmental officer appointed to do governmental work he differs from a sheriff only in the manner of his designation by appointment instead of by election, and in the specific nature of his duties. The reasoning of *Sibley* v. *State,* 89 Conn. 682, 96 Atl.

161, applies with great force, and we think is conclusive. A fireman regularly appointed under the provisions of the charter of the City of New Haven is not an employee within the definition of our Compensation Act.

The conclusion that claimant's husband did not come within the provisions of the Compensation Act renders unnecessary any discussion of any other questions in the case.

The Superior Court is advised to affirm the action of the Commissioner and dismiss the appeal.

In this opinion the other judges concurred.