[Civ. No. 3116. Second Appellate District, Division Two.—April 15, 1921.]

## A. L. JACKSON, Respondent, v. LOUIS J. WILDE, as Mayor, etc., et al., Appellants.

[1] Workmen's Compensation Act—Applicability to Firemen.—A regularly appointed member of a city's fire department is an "officer" and not an "employee" in the sense that he is in service

1. Whether firemen and policemen are officers or employees within the meaning of Workmen's Compensation Act, note, L. R. A. 1917D, 146.

Right of firemen or policemen to recover under Workmen's Compensation Acts, note, 10 A. L. R. 201.

under a contract of hire, and prior to the amendment of 1917 to the Workmen's Compensation Act, making the term "employee" embrace all elected and appointed paid public officers, the statute was not applicable to firemen.

[2] MUNICIPAL CORPORATIONS — SAN DIEGO — ORDINANCE CONCERNING FIRE DEPARTMENT—PART OF CHARTER.—The amendment of 1915 to section 2 of chapter 1 of article II of the charter of the city of San Diego, expressly continuing in force an ordinance reorganizing the fire department and providing for a relief and pension fund, had the effect of making the ordinance including the provision that a fireman on sick leave should be entitled to full pay a part of the city's organic law.

[3] ID.—FIXING OF COMPENSATION OF CITY FIREMEN—MUNICIPAL AFFAIR—CONSTITUTIONAL LAW.—Under subdivision 4 of section 8½ of article XI of the constitution, giving plenary authority to provide in any freeholder's charter or in any amendment thereto for the compensation that shall be received by every municipal officer or employee, the fixing of the compensation to be received by a city fireman is a "municipal affair" within the meaning of section 6 of article XI of the constitution.

[4] WORKMEN'S COMPENSATION ACT—SALARY OF FIREMAN—ABSENCE ON SICK LEAVE—NATURE OF COMPENSATION.—The salary of a city fireman fixed by a municipal charter is not compensation for anything other than the services contemplated, and in no sense is it to be regarded as compensation for "injury" within the meaning of the Workmen's Compensation Act, even though it be pay for a period of time during a part of which the fireman may have been absent on sick leave.

[5] MANDAMUS—ENFORCEMENT OF PARTICULAR ACTION BY TRIBUNAL.— While *mandamus* will not lie to control the discretion of an inferior tribunal or officer, it will lie to force a particular action when the law clearly establishes the petitioner's right thereto.

[6] ID.—APPROVAL OF CLAIM — MANDAMUS OF AUDITING BODY. — Although the writ of *mandamus* will not issue against an auditing body to allow a claim where the determination of whether the claim should be allowed or rejected involves the exercise of some *quasi*-judicial or discretionary power, the nature of the claim may be such as not to require the exercise of any judgment or discretion whatever.

[7] MUNICIPAL CORPORATIONS—SICK LEAVE OF FIREMAN ON FULL PAY —DETERMINATION OF CHIEF—AUDITING OF CLAIM—MANDAMUS.— Under a city ordinance vesting the chief of the fire department with full power to grant leaves of absence to firemen with full pay who, in his opinion, have contracted sickness or disability in line of duty, his determination of the matter, in the absence of fraud, is final and conclusive, and *mandamus* will lie to compel the auditing

committee of the city to audit and approve the claim of a fireman
for full pay, who has been granted sick leave by the chief under
such circumstances.

APPEAL from a judgment of the Superior Court of San
Diego County. E. A. Luce, Judge. Affirmed.

The facts are stated in the opinion of the court.

T. B. Cosgrove, City Attorney, S. J. Higgins, City At-
torney, and Arthur F. H. Wright, Deputy City Attorney,
for Appellants.

Wright & McKee for Respondent.

FINLAYSON, P. J.—This is an appeal from a judgment
in favor of plaintiff, a member of the fire department of the
city of San Diego, awarding a peremptory writ of mandate
commanding defendants, as members of the city's auditing
committee, to allow, approve, and order paid the city's
pay-rolls for the months of January and February, 1919,
in so far as the same pertain to plaintiff's salary.

Since 1889, San Diego has been operating under a free-
holders' charter. This charter provides for an auditing
committee whose duty it shall be "to examine, allow and
order paid, or reject and disallow all claims, demands and
bills of whatever nature (except monthly salaries of city
officers as fixed by this charter) which may be presented
against the city." It is further provided that "the Auditor
shall not draw a warrant for any bill unless the same has
been approved by a majority of the whole Auditing Com-
mittee," and that "all demands, bills and claims which may
arise against the city, including the pay-roll of all employees
of the city, whether under regular monthly salary or not
(except salaries of city officers fixed by this charter), shall
be duly verified as hereinafter provided, and shall be filed
with the Secretary of the Auditing Committee, who shall
file and number the same in the order of presentation, and
refer the same to the Auditing Committee for action, whose
duty it shall be to allow or reject the same, in whole or
in part, and if allowed, designate the particular fund from
which they are to be paid. . . ." (Stats. 1889, p. 704.)

Plaintiff, for seven or eight years past, has been a fire-
man regularly employed in the city's fire department at a

monthly salary of $125, less the sum of one dollar per month
which the city treasurer is required to retain from the
monthly pay of every member of the department to be
paid into the firemen's relief and pension fund. In Jan-
uary, 1913, an ordinance numbered 4979 and entitled ''An
Ordinance reorganizing the San Diego Fire Department
and providing for a Firemen's Relief and Pension Fund''
was regularly adopted. This ordinance provides that the
city's fire department shall be under the management of
the superintendent of fire, who, subject to the approval of
the common council, shall organize the department, create
such fire companies as he may deem necessary, prescribe
the number and duties of the officers and employees, and
exercise full power and authority over all appropriations
made for the use of the department, subject to the approval
of the common council. Section 8 of the ordinance pro-
vides: ''The Superintendent of the Department may grant
such leave of absence with full pay, not to exceed one year,
to any Fireman who has contracted sickness or disability in
the line of duty. . . . The Chief of the Fire Department
may grant such leave of absence, not to exceed thirty days,
with full pay, or, for other reasons, a leave of absence with-
out pay.''

In the months of January and February, 1919, one Louis
Almgren was both superintendent and chief of the fire de-
partment. Plaintiff, some time shortly prior to January 26,
1919, contracted a cold. Upon the ground that plaintiff's
cold was a sickness or disability contracted by him in the
line of his duty as a fireman, Almgren, as superintendent
and chief of the fire department, granted plaintiff a leave
of absence, with full pay, from and including January 26,
1919, to and including February 8, 1919. Almgren made
out the department's pay-roll for each of the months of Jan-
uary and February. Each pay-roll contained a provision to
the effect that plaintiff was entitled to the full amount of his
monthly salary of $125, less the one dollar required to be de-
ducted for the firemen's relief and pension fund. The pay-
rolls were duly approved and verified by Almgren, as
provided by said ordinance No. 4979, and on March 20, 1919,
they were delivered to the secretary of the auditing commit-
tee for the committee's allowance and approval. On March
26th each of the pay-rolls, so far as it related to plaintiff's

salary, was disallowed and rejected by the auditing committee upon the ground that plaintiff's sickness and disability was not contracted in the line of his duty as a member of the fire department, and that, therefore, he was not entitled to any salary during the time he was absent from duty. The trial court found that plaintiff's sickness was contracted in the line of his duty, and adjudged that the writ issue commanding defendants, as members of the auditing committee, to allow, approve, and order paid each of the pay-rolls in so far as they pertain to plaintiff's salary.

Appellants' first contention may thus be stated: If plaintiff were allowed pay during the days' he was absent from duty on sick leave, he, in effect, would be receiving from the city of San Diego compensation for "injury," within the meaning of the Workmen's Compensation, Insurance and Safety Act; that act, in section 6, declares that liability for the compensation provided therein for any injury sustained by an employee, arising out of, and in the course of, his employment, shall exist against his employer in lieu of any other liability for such injury (Stats. 1917, p. 834); the city's charter is silent respecting compensation to city employees for injuries sustained by them in the course of and arising out of their employment; therefore, so the argument runs, the case is within the rule that a city having a freeholders' charter is subject to general laws, even in municipal affairs, when the subject matter is not covered by the charter; and plaintiff therefore is entitled only to such compensation for the sickness which he claims was contracted by him in the line of his duty as is provided by the Workmen's Compensation Act. In short, the claim is that the provision of the ordinance authorizing the superintendent or chief of the fire department to grant a fireman sick leave on full pay has been superseded by the Workmen's Compensation Act, and no longer is in force. [1] Were it not for the amendment of 1917 to the Workmen's Compensation Act, there would be no possible basis for any such contention, for, prior to that amendment, the act was not applicable to "public officers" (*Mono County* v. *Industrial Acc. Com.*, 175 Cal. 752, [167 Pac. 377]); and a regularly appointed member of the city's fire department is an "officer," and is not an "employee" in the sense that he is in service under a contract of hire. (*McDonald* v. *New Haven,*

94 Conn. 403, [10 A. L. R. 193, 109 Atl. 176]. See, also, *Blynn* v. *Pontiac*, 185 Mich. 35, [151 N. W. 681].) In 1917, the statute was amended so as to cause the term "employee," as used in the act, to embrace "all elected and appointed paid public officers." (Stats. 1917, p. 835.)

[2] Appellants' argument assumes that the charter of San Diego is wholly silent upon the right of a fireman to sick leave on full pay. Such, however, is not the case. In 1915, section 2 of chapter 1 of article II of the city's charter was amended, so that subdivision "j" of that section now reads: "Such manager of operation and superintendents shall be the executive heads of their respective departments and shall appoint and remove their assistants and employees, subject to such civil service regulations as this charter may provide, except that provisions now contained in the People's Ordinance No. 4979 and entitled 'An Ordinance reorganizing the San Diego Fire Department and providing for a Firemen's Relief and Pension Fund' shall continue in full force and effect." (Stats. 1915, p. 1828.) Here is an express declaration in the city's charter that the provisions of the ordinance under which plaintiff claims the right to full pay for the two months during parts of which he was absent on sick leave "shall continue in full force and effect." To all intents and purposes the ordinance, including the provision that a fireman on sick leave shall be entitled to full pay notwithstanding his enforced absence, has become a part of the city's organic law.

[3] That provision of Ordinance No. 4979 under which plaintiff claims the right to a full month's salary for each of the months of January and February, 1919, relates to the "compensation" of the members of the city's fire department. By subdivision 4 of section 8½, article XI, of the state constitution, plenary authority is given to provide in any freeholders' charter, or in any amendment thereto, for the "compensation" that shall be received by every municipal officer or employee. The fixing of the compensation to be received by a city fireman is a "municipal affair," within the meaning of section 6, article XI. It follows, therefore, that the amendment of 1915 to the charter, whereby it was declared that the provisions of Ordinance No. 4979 "shall continue in full force and effect"— an amendment adopted after section 6 of article XI had

been amended in 1914—is paramount to any general law respecting such matters as are dealt with in the ordinance.

For the foregoing reasons we fail to see how there can possibly be any room for the application of the rule that, with respect to a municipal affair upon which a freeholders' charter is silent, the provisions of any general law pertaining thereto shall control.

Moreover, appellants' contention is based upon the erroneous assumption that if plaintiff receive pay for the time he was away on sick leave he will thereby be receiving compensation for "injury," within the meaning of the workmen's compensation law. Plaintiff was not employed by the day, nor did he contract for or receive a *per diem* compensation. He was appointed for an indefinite period, at a fixed monthly salary. His compensation, provided, we assume, by ordinance duly adopted by the common council, was annexed to or was an incident of his office cr employment. So long as he continues to fill the office of fireman he is entitled to the full amount of his monthly salary, regardless of any temporary absence from duty, save, of course, in so far as the ordinance in question contemplates that he shall not receive full pay if he be absent from duty without a leave of absence on account of sickness or disability contracted in the line of duty. It is well settled that a person holding a public office has a *prima facie* right to the salary thereof, although he be physically disabled from performing his duties; and if there be no law or regulation authorizing the discontinuance of the compensation during the disability, the only remedy is his removal. His right to compensation is not by virtue of contract, express or implied, but exists, when it exists at all, as a creature of law and as an incident to the office. (*Bates* v. *St. Louis*, 153 Mo. 18, [77 Am. St. Rep. 701, 54 S. W. 439]; *Stratton* v. *Oulton*, 28 Cal. 44; *Burke* v. *Edgar*, 67 Cal. 182, [7 Pac. 488]; *Cavanee* v. *City of Milan*, 99 Mo. App. 672, [74 S. W. 408]; *O'Leary* v. *Board of Education*, 93 N. Y. 1, [45 Am. Rep. 156]; *Bryan* v. *Cattell*, 15 Iowa, 538; *People* v. *Bradford*, 267 Ill. 486, [108 N. E. 732].) As said in *Stratton* v. *Oulton, supra,* the salary "is incident to the title to the office and not to its occupation or exercise." (28 Cal. 51.) This rule has been held to apply to such public servants as policemen. (*People* v. *French*, 91

N. Y. 265; *State* v. *Walbridge,* 153 Mo. 194, [54 S. W. 447];
*Frederick* v. *Peoria,* 203 Ill. App. 486.) If applicable to
policemen, the rule must be equally applicable to firemen.

Plaintiff's title to the office of fireman is not disputed.
To that office the law attaches a monthly salary, and to that
salary he is entitled so long as the law creating it remains
in force and he continues to hold the office. The legal right
to the office carries with it the legal right to the salary,
and his right thereto is not dependent upon the fact of
value of services actually rendered.

[4] Ordinance No. 4979 contemplates the performance of
services by a fireman only during such times as he is not
incapacitated for duty by reason of sickness or disability.
The monthly salary that goes with the office is the fireman's
compensation for the *services* that are contemplated by the
ordinance. The salary is not compensation for anything
other than the services that are within the purview of the
ordinance. In no sense, therefore, can a fireman's fixed
monthly salary be regarded as compensation for *"injury,"*
within the meaning of the Workmen's Compensation Act,
even though it be pay for a period of time during a part
of which he may have been absent on sick leave.

For the foregoing reasons we conclude that there is no
merit in appellants' first contention.

It next is claimed that *mandamus* is not the proper
remedy. Appellants' argument is, in substance, this: The
auditing committee, in passing upon the city's pay-rolls,
is vested with discretionary and judicial powers; in the
instant case the committee was vested with power to de-
termine whether plaintiff's alleged illness was contracted
in the line of his duty; in deciding that question the com-
mittee exercised a discretionary or *quasi*-judicial power;
therefore, say counsel for appellants, *mandamus* will not
lie.

[5] While it undoubtedly is true that *mandamus* will
not lie to control the discretion of an inferior tribunal or of-
ficer, meaning by that that it will not lie to force the exercise
of discretion in a particular manner, it will lie to force
a particular action by the inferior tribunal or officer when
the law clearly establishes the petitioner's right to such ac-
tion. Where, by the express declaration of the legislature
or other law-making body, a given result must follow a given

state of facts, with no room for the play of discretion upon the part of the inferior tribunal or officer, the writ may issue to compel the granting of specific relief. (*Inglin* v. *Hoppin,* 156 Cal. 483, [105 Pac. 582].) In *Hensley* v. *Superior Court,* 111 Cal. 541, [44 Pac. 232], the superior court had refused to make or enter an order or decree of due notice to creditors, upon the ground that the order for the notice was not in conformity with the law. The supreme court, in issuing its mandate, declared: ''Where, as here, the law affixes the right to specific relief upon certain facts, and there is no question made as to the existence of such facts, the court has no discretion to refuse the relief. In such a case the limit of the discretionary power of the court has been reached, and nothing but a clear duty remains; and if the relief is refused, and there is, as in this instance, no appeal or other plain, speedy, and adequate remedy, *mandamus* will lie to compel it.''

[6]  Though the writ will not issue against an auditing body to allow a claim where the determination of whether the claim should be allowed or rejected involves the exercise of some *quasi*-judicial or discretionary power, the nature of the claim may be such as not to require the exercise of any judgment or discretion whatever. In that case the writ may issue to compel the committee or auditing body to audit and approve the claim. · (*Lawrence* v. *Booth,* 46 Cal. 187; *Wood* v. *Strother,* 76 Cal. 545, [9 Am. St. Rep. 249, 18 Pac. 766]; *Hammel* v. *Neylan,* 31 Cal. App. 21, [159 Pac. 618]; *Bryan* v. *Cattrell, supra.*)

[7]  In the instant case, defendants, members of the auditing committee provided for by the San Diego city charter, were not called upon to exercise any legal discretion whatever. By the express terms of the ordinance under which plaintiff claims the right to a full month's salary for each of the months of January and February, Almgren, as superintendent and chief of the fire department, was vested with the whole power to grant leave of absence, with full pay, to any fireman who, in the chief's opinion, had contracted sickness or disability in the line of duty. Almgren, who at this time was both superintendent and chief of the fire department, alone had the right to pass upon the sufficiency of the cause of absence, and whether it had been produced by sickness or disability contracted in the public

service; and the right of any fireman to sick leave rested solely and entirely in his discretion. (See *Santa Minto* v. *City of New York,* 3 E. D. Smith (N. Y.), 386.)

The superintendent and chief of the fire department having, in the exercise of the discretionary power with which he alone is vested, granted to plaintiff a leave of absence with full pay, on the ground that he had contracted sickness while acting in the line of his duty, the ordinance, upon that state of facts, steps in and declares, in effect, that plaintiff is entitled to his full month's pay without any deduction whatever, save, of course, the one dollar that goes to the firemen's relief and pension fund. No room, therefore, was left for the exercise of any discretion on the part of the auditing committee, and it clearly was the duty of the superior court to issue its mandate to defendants, that thereby plaintiff might be accorded the right to which the city's ordinances indubitably entitle him. *Sullivan* v. *Gage,* 145 Cal. 759, [79 Pac. 537], a case upon which appellants place much reliance, is nowise inimical to our conclusion that *mandamus* is a proper remedy. The claim that was presented to the state board of examiners in that case was one essentially calling for the exercise of the board's discretion and judgment. Discretion and judgment were exercised by the board, with the result that the claim was rejected. Here the only question involving the exercise of discretion or judgment was, Did plaintiff contract his illness while acting for the city in the line of his duty as a fireman? The power and authority to answer that question was lodged in the superintendent and chief of the fire department, where we naturally would expect it to be placed. The authority and power to determine whether plaintiff was ill, and, if he was, whether his illness was contracted in the line of duty, was an authority and power that had to be lodged somewhere. The ordinance, the provisions of which were incorporated into the city's charter by the amendment of 1915, lodges that power in the person who, by reason of his daily association and contact with the men under his supervisory care, is the one best fitted to exercise such discretionary powers—the superintendent and chief of the fire department. True, the pay-rolls, when made out, approved and verified by the fire chief, must pass

through the hands of the auditing committee in the ordinary course of business; but the amounts of the salaries allowed by the committee can be no other than such as are fixed by the charter or by ordinance passed pursuant thereto. In the Sullivan case our supreme court quotes from the opinion of the New York court of appeals in *Osterhoudt* v. *Rigney,* 98 N. Y. 223, as follows: "The acts of a board of audit, within its jurisdiction, in the absence of fraud or collusion, are final and conclusive, and cannot be questioned on a collateral proceeding. Whether the claim is a proper town or county charge, *in a case where it is doubtful, and rests upon disputed evidence,* and what amount shall be allowed when not fixed by statute, are questions which the statute commits to the determination of the board of audit; and however much it may err in judgment upon the *facts,* so long as it keeps within its jurisdiction, and acts in good faith, its audit cannot be overhauled, but is final, as well as to the taxpayers as to the claimants." (Italics ours.) If plaintiff's rights be measured by this clear and correct statement of the law, it will be apparent that he has not mistaken his remedy. The fire chief, in whom the whole power is lodged, determined that plaintiff contracted illness in the line of his duty, and for that reason gave him leave of absence with full pay. The amount, therefore, to which plaintiff was entitled was not doubtful, it did not rest upon disputed evidence, and it was definitely fixed by ordinance.

Appellants contend that the evidence is insufficient to justify the finding that plaintiff contracted sickness and disability in the line of his duty as a member of the fire department. Fire Chief Almgren, the only witness in the case, testified that plaintiff had contracted a cold which later turned into influenza; that plaintiff was on duty twenty-four hours a day, except one day in every five or six, when he was given a day off duty under a regulation which allows every fireman one day off in every five or six; that firemen are peculiarly subject to colds by reason of their exceptional exposure when on duty; and that at the time in question a great number of the men had colds. Absolute certainty as to the time when plaintiff contracted the cold is not required. It is sufficient that it is more probable that he con-

tracted it while on duty, when he was peculiarly exposed to the ordinary causes of such an illness, than that he "caught the cold," as the saying is, when off duty. (See *San Francisco* v. *Industrial Acc. Com.*, 183 Cal. 273, [191 Pac. 26]; *Engels etc. Min. Co.* v. *Industrial Acc. Com.*, 183 Cal. 714, [11 A. L. R. 785, 192 Pac. 845]; *Santa Minto* v. *City of New York, supra.*)

Moreover, as we view the case, the question whether plaintiff contracted the cold while on duty was not a proper issue in the case. For reasons already stated, we think that was primarily a question for the fire chief, to be determined by him when he was called upon to decide whether plaintiff should be given a leave of absence with full pay. His decision upon that question, in the exercise° of his honest judgment, was final and conclusive; for in him, and in him only, was that discretionary or *quasi*-judicial power lodged. Of course, if he did not exercise an honest judgment, which is nothing other than to say no judgment whatever, then his mere arbitrary or fraudulent *ipsi dixit* would not vest plaintiff with the rights appertaining to a valid sick leave. But no claim has been made that the fire chief acted fraudulently, collusively, or arbitrarily. No issue of that kind was presented by appellants in their return to the alternative writ. The chief's determination, therefore, that plaintiff was entitled to sick leave on full pay was final and conclusive.

Finally, the claim is made that the lower court erred in sustaining certain of respondent's objections to questions propounded to the witness by appellants' counsel and in overruling certain objections interposed by appellants to questions put to the witness by respondent's counsel. These contentions are based upon the assumption that the discretionary power to grant leaves of absence, and to determine whether they should be granted with full pay on account of sickness contracted in the line of duty, is not wholly lodged in the superintendent or chief of the fire department, and that the chief's decision thereon is subject to review by the auditing committee. Since we think that the whole power is lodged exclusively in the superintendent and chief, and that an honest exercise of his discretionary power is final and conclusive, we do not think it necessary to consider

these objections in detail. The rulings objected to certainly were not prejudicial.

There are no other points that merit consideration.

Judgment affirmed.

Works, J., and Craig, J., concurred.