[Civ. No. 7287. Second Appellate District, Division Two.—March 2, 1933.]

MILLARD D. MASON, an Insane Person, etc., Appellant, v. CITY OF LOS ANGELES (a Municipal Corporation) et al., Respondents.

Rollinson, Orbison, Phister & Irwin, Chas. W. Rollinson and Don S. Irwin for Appellant.

Erwin P. Werner, City Attorney, and Jerrell Babb, Deputy City Attorney, for Respondents.

ARCHBALD, J., *pro tem.*—Millard D. Mason was on the twenty-third day of April, 1928, a duly appointed and acting member of the Los Angeles fire department. On that date, pursuant to order of the chief engineer of said department, he was taken to the psychopathic ward of the General Hospital for observation, and one week later was adjudged insane and committed to the state hospital at Patton. Apparently no affirmative action has been taken

to remove him from his position as fireman except that taken by the chief engineer, who on the 3d of May, 1928, entered upon the records of the department what purported to be Mason's resignation. Demand was later made by Mason through his guardian *ad litem* that said chief engineer, whose duty it was to make up the pay-roll, enter Mason's name thereon, which was refused. This proceeding was brought in *mandamus* to compel such entry as of April 20, 1928, to compel the city auditor to approve such salary demand and to approve pay checks therefor, and to compel the city treasurer to pay the same. From a judgment in favor of defendants an appeal was taken.

The salary of members of the Los Angeles fire department, including members of the class of appellant, is fixed by city ordinance, that of appellant under such ordinance being $200 per month less a four per cent contribution to the pension fund. Under the charter of the city the chief administrative officer of the fire department is the chief engineer (Stats. 1925, p. 1070, sec. 134), whose duty it is, at the expiration of the period fixed in the salary ordinance, to make out a pay-roll "of all persons employed in such department or office during the preceding salary period, stating the amount of compensation of such persons in detail" (sec. 364). ██ It is appellant's contention that he is a public officer, and that the salary of his office, being fixed by city ordinance and not by contract, is incident to the title to the office regardless of its occupancy and the performance of the duties thereof.

At least one count of appellant's petition in the trial court is framed on such theory, and the duty of the chief engineer, so far as payment of departmental salaries is concerned, would seem to be purely ministerial, as well as that of the auditor and treasurer. There being no room for the exercise of discretion on the part of such officers, therefore, *mandamus* would seem to be a proper remedy. (*Allied Architects Assn.* v. *Payne,* 192 Cal. 431 [221 Pac. 209, 30 A. L. R. 1029].)

██ Appellant urges that his contention is the recognized rule in this state, citing the case of *Jackson* v. *Wilde,* 52 Cal. App. 259 [198 Pac. 822], in support thereof. That case was urged as authority for a reversal of the judgment in *Evans* v. *City of Los Angeles,* 216 Cal. 495 [14 Pac. (2d)

752], and with regard to it the Supreme Court says, at page 357: "The case of *Jackson* v. *Wilde, supra,* states that a fireman is a public officer and that his salary is annexed to his office and payable whether he is rendering services or not, and that therefore this payment [of salary under ordinance during disability] cannot be considered compensation [under the Workmen's Compensation Act]. We deem it unnecessary to discuss the conflict of authority on the question whether firemen are 'public officers' rather than employees, since such a characterization does not solve the fundamental problem of the proper interpretation of the ordinance and the state law." We therefore cannot agree with counsel for appellant that the question is settled in this state. We are not unmindful of the many respectable authorities outside of the state supporting appellant's position, but regardless of what the situation may be in other states or under the charter of the city of San Diego under consideration in *Jackson* v. *Wilde, supra,* we are forced to the conclusion that under the charter of the city of Los Angeles appellant was not a public officer.

Section 5 of the charter last mentioned provides that the officers of the city shall be "the members of the boards of the departments and the chief administrative officer of each department" and "such other officers as shall be named by ordinance". Section 70 creates the various departments of the city, among which is that of "Fire". Section 71 provides that such departments "shall be under the control and management of a board of five commissioners". Section 134 makes the chief engineer of the fire department its chief administrative officer, and section 135 gives such officer the power to "suspend or remove" any officer or employee of the fire department for cause. Such section also provides that in case of such removal or suspension the accused has the right to have the charges tried by a board of inquiry appointed by the chief engineer, "to consist of three (3) officers of the rank of Battalion Chief or higher, chosen by the accused at the time of filing such application [for hearing], by drawing three (3) names from a box containing slips of paper on which are the names of all officers qualified to sit upon said Board of Inquiry".

Our attention is not called to any ordinance making a fireman an officer of the city of Los Angeles, and in the

face of a charter provision expressly designating the officers of that city we can only draw the conclusion that all not so designated are not officers of the city and therefore are not public officers. Consequently we fail to see how appellant can bring himself within the official class. (*Burroughs* v. *Eastman,* 93 Mich. 433 [53 N. W. 532]; *Brown* v. *Uhr,* (Tex. Civ. App.) 187 S. W. 381.) It also appears from the portion of the charter cited that within the fire department itself there are different officers contemplated. The boards of inquiry are to be comprised of three officers of the rank of ''Battalion Chief or higher'', and we think we may presume that under the battalion chief there is probably a ''captain'' over each fire company. Yet these are not made *officers* of the city by the charter. When the words ''officer and employee'' are used in section 135 with reference to the power of the chief engineer to remove or suspend, the charter certainly draws only a distinction between those who are officers of the department and those who are employees. In fact, the inference to be drawn from the charter is that there are those in the department force who perform duties under the supervision and direction of the officers thereof and who are employees as contrasted with those designated as officers. This is clearly shown by section 131 of the charter, which provides in part as follows, the italics being ours: ''The officers of the Fire Department *in charge* at the scene of any fire shall have full power and authority to direct the operation of extinguishing the same and to take the necessary precautions to prevent the spread thereof.'' And we think we may take judicial notice of the fact that the officers of the department do not, by themselves, operate the motors which run the trucks, nor do they handle the ladders, picks, axes and other implements used in fire fighting. In our opinion we may properly conclude that the duties of a ''fireman'' consist in following the instructions of the officers of the department by the performance of some of the actual physical work.

It would seem, too, that that part of section 135 which says that ''any person'', i. e., any officer or employee, ''restored to duty or reinstated in his position after suspension or removal . . . shall be entitled to receive full compensation from the city the same as if such suspension or removal had not been made'', makes the inference conclusive that except

for such provision the persons therein named would not be entitled to compensation during the period they have been wrongfully suspended or removed. (*Walsh* v. *Bridgeport*, 88 Conn. 528 [91 Atl. 969, Ann. Cas. 1917B, 318].) It would be an anomalous situation if an officer or employee of the department who is ready, willing and able to work, but who has been wrongfully prevented from working, were not entitled to his lost salary except for an express provision entitling him to it, while one who is incapacitated from work, not by reason of disability incurred in the performance of his duty, and who stands in the same class so far as performance of a duty to the public is concerned as the one suspended or removed, would be entitled to his full salary for an indefinite period, although his brother so removed, under the charter provision which prevents compensation after reinstatement, would be limited to a definite period of "six months". We must conclude, therefore, that there is no sanction in the charter to pay compensation in such a case to one so incapacitated, and that such sanction must be found before it can be done.

The great majority of the cases we have seen from other jurisdictions which support appellant's contention do not seem to be based on a construction either of the charter provisions of the municipality or of the law providing for the organization of a fire department, but on the general principle of the law relating to public officers and a determination by the courts that a fireman is such an officer. While the cases so holding are the majority in number, in our opinion the minority cases have the greater weight of authority. Some of such cases, involving the question whether or not a fireman comes within the Workmen's Compensation Act of the particular state, like that of *McDonald* v. *New Haven*, 94 Conn. 403 [109 Atl. 176, 180, 10 A. L. R. 193], construe such act as applicable only to a relationship of employer and employee, arising out of contract, and hold that a fireman, being appointed to his position, which is created by law, "and performing duties which flow from sovereign authority", occupies a public office, and that his relation is in no sense contractual, which last conclusion is correct although we cannot agree that he "occupies a public office". Undoubtedly if it were not for the firemen the department would not perform its public function of pro-

tecting the combustible property of the city; but in our opinion it does not necessarily follow, because of that, that they are holding public offices. The responsibility is placed upon the commissioners and the chief engineer of the department by the charter, and the firemen and other officers under them simply assist in performing such public duty, exercising no part of the discretion which is vested in their superiors by the charter. Carried to its logical conclusion, such an argument as that presented here would make a public officer of every person, however menial his duties, employed in a department of the municipality, to whom the charter has given certain functions to perform for the public benefit, because he is appointed, his position is created, and his wages or salary is fixed, by law. He may hold his position by a certain tenure, under civil service or charter provision, and be doing a public service by laboring in such department, but that alone certainly does not make him a public officer. As the then Justice Cooley of the Supreme Court of Michigan said in the case of *Throop* v. *Langdon,* 40 Mich. 673, 682, ''the officer is distinguished from the employee in the greater importance, dignity and independence of his position''; and, he might have added, ''in the authority to direct and supervise, either expressly given him by the law creating the office or necessarily implied''— which, of course, must need the assistance of others not having any of those distinguishing characteristics, or there would be none to direct and supervise in carrying out the responsibility fixed by law on such officer.

But we fail to see how being a public officer would give to appellant the desired relief. Section 9 of article II of the charter before us provides: ''An office becomes vacant when the incumbent thereof . . . is adjudged insane,'' etc. Inasmuch as this section is in the article designating who are officers of the city, appellant urges that it applies only to the officers so designated. There is no question, though, but that it was the intention of the voters of Los Angeles who adopted the charter, and of the legislature which ratified the same, that such section should apply to all ''officers'' of the city; and if appellant was at the time of his affliction possessed of an office we are certain that it became vacant *ipso facto*—if not under said section of the charter, then under section 996 of the Political Code,

which provides that "an office becomes vacant on the happening of either of the following events before the expiration of the term: . . . 2. His [the incumbent's] insanity, found upon a commission of lunacy issued to determine the fact." "It will be seen that with respect to the case in hand the provisions of the charter and the state law are identical. Either in the absense of the other would give the same effect to any one of the enumerated contingencies . . . , that is to say, the office becomes *ipso facto* vacant." (*McKannay* v. *Horton,* 151 Cal. 711, 717 [91 Pac. 598, 600, 121 Am. St. Rep. 146, 13 L. R. A. (N. S.) 661].)

Judgment affirmed.

Works, P. J., and Craig, J., concurred.